# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**EFRAIN VIVEROS**                                                          **PETITIONER**
**ADC #134814**

**VS.**                          **CASE NO.: 5:10CV00262 JMM/BD**

**RAY HOBBS, Director,**                                                    **RESPONDENT**
**Arkansas Department of Correction**

## RECOMMENDED DISPOSITION

**I.**      **Procedure for Filing Objections:**

The following Recommended Disposition has been sent to United States District

Judge James M. Moody.  Any party may file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the

objection.  If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.  An original and one copy of your objections must

be received in the office of the United States District Court Clerk no later than fourteen

(14) days from the date of this Recommended Disposition.  A copy will be furnished to

the opposing party.   Failure to file timely objections may result in waiver of the right to

appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

II.   **Introduction**:

Petitioner Efrain Viveros, an inmate in the Arkansas Department of Correction, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #1), challenging his conviction in the Circuit Court of Crawford County, Arkansas. Respondent Ray Hobbs filed a response.  (#6) The Court recommends that the District Court DISMISS the petition with prejudice because federal courts are barred from deciding Mr. Viveros's habeas corpus claims.

III.   **Background**:

On August 20, 2003, Mr. Viveros was the passenger in a van traveling in Arkansas on Interstate 40.  Officer Bowman of the Van Buren Police Department stopped the van for having no license plate light.  Both Mr. Viveros and the driver of the van signed a consent to search the van.  After a search, law enforcement personnel found a large quantity of methamphetamine.

On November 3, 2005, a Crawford County jury found Mr. Viveros guilty of possession of methamphetamine with intent to deliver; possession of drug paraphernalia; and two counts of failure to appear.  As a result of these convictions, Mr. Viveros is currently serving a 110-year aggregate term of imprisonment.

IV.   **Discussion**:

In his petition, Mr. Viveros claims that: (1) the trial court erred in failing to suppress the evidence seized during the traffic stop (#1, p. 3-7); (2) the trial court erred by refusing to grant a directed verdict on the two failure-to-appear charges (#1, p. 7-9); (3) his trial counsel was ineffective for failing to notify him of his right to contact the Mexican Consulate (#1, p. 9-12); and (4) his trial counsel was ineffective for failing to timely request an interpreter to assist in pretrial investigations and interviews (#1, p. 12-13). Director Hobbs responds that: (1) Mr. Viveros's argument for suppression of evidence cannot be decided in this federal habeas proceeding (#6, p. 4-6); (2) the Arkansas Court of Appeals reasonably adjudicated Mr. Viveros's challenge to his failure-to-appear convictions (#6, p. 6-10); and (3) Mr. Viveros cannot show prejudice from his trial counsel's alleged deficiencies (#6, p. 10-12).

A.    *Suppression of Evidence*

Mr. Viveros leans on the Fourth Amendment for his argument that the traffic stop violated his rights and that the trial court erred in failing to suppress the evidence seized during the stop. Respondent contends that Mr. Viveros's Fourth Amendment argument is barred by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037 (1976).

In *Stone v. Powell*, the United States Supreme Court held that, where a state prisoner has been afforded "an opportunity for full and fair litigation of a Fourth Amendment claim, [he] may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his

3

trial." *Stone*, 428 U.S. at 494.  The Eighth Circuit, in *Willett v. Lockhart*, 37 F.3d 1265,

1273 (8th Cir. 1994) (en banc), set out a two-part test to determine whether an

opportunity to litigate a Fourth Amendment claim in state court was "full and fair."  A

state court Fourth Amendment claim is fully and fairly litigated, and thus barred from

federal habeas review, unless:

> (1) the state provided no procedure by which the petitioner could raise his
> or her Fourth Amendment claim, or (2) the petitioner was foreclosed from
> using that procedure because of an unconscionable breakdown in the
> system.

*Id*.

When reviewing a Fourth Amendment claim, a federal habeas court is not required

to conduct a hearing.  *Id*. at 1270-71.  Additionally, the reviewing court should not review

of the state court records to second-guess whether the state court's factual findings are

supported by the record.  *Id*. at 1270.  The Fourth Amendment claim may be barred even

if the state court erred in deciding the legal merits of the claim.  *Id*. at 1268; see also

*Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).

In this case, Mr. Viveros, while represented by counsel, raised his Fourth

Amendment argument with the trial court through a pretrial motion to suppress.  (#1,

Exhibit 4)  The trial court held an evidentiary hearing on the motion,  and Mr. Viveros

was given the opportunity to present witnesses and make arguments.  The trial court ruled

on the merits of Mr. Viveros's Fourth Amendment claim, and he appealed that ruling in

his direct appeal to the Arkansas Court of Appeals.  *Viveros v. State*, 2007 WL 757643

4

(Ark.App. March 14, 2007).  The Court of Appeals reviewed the trial court's ruling and affirmed.  *Id.*

Arkansas provided a procedure by which Mr. Viveros could raise his Fourth Amendment claim, and he used that procedure.  Consequently, this Court cannot review Mr. Viveros's Fourth Amendment suppression claim.  *Stone*, 428 U.S. at 494.

B.    *Failure to Appear*

Mr. Viveros argues that the trial court erred by refusing to grant his motion for directed verdict on his two failure-to-appear convictions.  But he bases this claim on state, rather than federal, law.

"When a claim has been adjudicated on the merits in state court, habeas relief is warranted only if the state court proceeding resulted in: (1) a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Bucklew v. Luebbers*, 436 F.3d 1010, 1015 (8th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1) and (2)); see also *Rompilla v. Beard,* 545 U.S. 374, 380, 125 S.Ct. 2456, 2462 (2005).

A state court decision is "contrary to" federal law if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or if the state court decides a case differently than the [United States Supreme] Court

5

has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495 (2000). A decision is "an unreasonable application" of federal law "if the state court identifies the correct governing legal principle from the [United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.

In his petition, Mr. Viveros does not raise an issue of federal law regarding his failure to appear convictions. Instead, he relies on Arkansas statutory law, Arkansas rules of criminal procedure, and Arkansas case law. (#1, p. 7-9) Importantly, Mr. Viveros did not present any federal law issues to the Arkansas Court of Appeals for its consideration. *Viveros*, 2007 WL 757643 at p. 2-4. Without raising or addressing an issue of federal law, this Court cannot find the state court's decision to deny a motion for directed verdict contrary to, or an unreasonable application of, clearly established federal law.

 In considering a claim that a state court made an unreasonable determination of the facts, a federal habeas court must presume the state court's factual findings were correct, unless there was a procedural error. State findings may be set aside "only if they are not fairly supported by the record." *Nicklasson v. Roper*, 491 F.3d 830, 841 (8th Cir. 2007) (quoting *Purkett v. Elem.*, 514 U.S. 765, 769, 115 S.Ct. 1769 (1995)).

In his petition, Mr. Viveros claims that there was no evidence that he had notice of the court appearances he missed. (#1, p. 7-8) There is no dispute that Mr. Viveros missed court appearances on June 7, 2004, and December 9, 2004–the basis for his two

failure-to-appear convictions.  As the Court of Appeals noted, there was evidence that Mr. Viveros had actual notice of both hearings.

At the June 7, 2004 proceeding, Mr. Viveros's attorney stated, "Your Honor, I have spoken with [Mr. Viveros] . . . .  In fact, I speak with his cousin, who translates for him.  He is supposed to be here and knows of his hearing."  See *Viveros*, 2007 WL 757643 at p. 3.  At his trial, Mr. Viveros admitted that he was notified of his December 9, 2004 hearing.  *Id*. at p. 4.  With his attorney's statement and his own testimony showing that he had notice of the hearings, the trial court's factual determination regarding notice was not unreasonable.

C.     *Mexican Consulate*

Mr. Viveros claims that his trial counsel was ineffective for failing to notify Mr. Viveros of his right to contact the Mexican Consulate.  He argues that under the *Vienna Convention on Consular Relations*, April 24, 1963, 21 U.S.T. 77 ("Vienna Convention"), he had a "constitutional and international right" to have the Mexican Consulate notified of his arrest.  (#1, p. 9-12)  This argument is contrary to prevailing federal law.

In *Medellin v. Texas*, 552 U.S. 491, 513, 128 S.Ct. 1346, 1361 (2008), the Supreme Court noted that the Vienna Convention did not create domestically enforceable federal law.  When later denying a stay of execution, the Supreme Court found that Congress had not acted to give the Vienna Convention the force and effect of domestic law.  *Medellin v. Texas*, 554 U.S. 759, 760, 129 S.Ct. 360, 361 (2008).  The Fifth Circuit

Court of Appeals, earlier in the same litigation, found that the Vienna Convention did not confer individually enforceable rights.  *Medellin v. Dretke*, 371 F.3d 270, 280 (5th Cir. 2004), cert. granted, 543 U.S. 1032, 125 S.Ct. 686 (2004), cert. dismissed as improvidently granted, 544 U.S. 660, 125 S.Ct. 2088 (2005).

The Eighth Circuit Court of Appeals has yet to decide whether the Vienna Convention creates an individually enforceable right to consular notification, whether a defendant must show prejudice to vindicate that right, if it exists, or what remedies are available for such a violation.  *United States v. Santos*, 235 F.3d 1105, 1107-1108 (8th Cir. 2000).  The Court has hinted, however, that the Vienna Convention does not confer an individually enforceable right.  *Id*. (Beam, J., concurring).

With the current state of the law regarding the Vienna Convention, it is clear the state court decision to deny relief based on a lack of consulate notification was proper.  At a minimum, it was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).

Mr. Viveros insists, however, that denial of consulate notification deprived him of "certain mediating power and [assistance] during pretrial preparations, investigations, interviews, critical stages of trial and his appeal process."  (#1, p. 9)  Essentially, he argues that the failure to notify the consulate caused a deficient performance by his trial counsel.  This claim and Mr. Viveros's final claim–that his trial counsel was ineffective for failing to timely request an interpreter to assist in pretrial investigations and

8

interviews– are inextricably intertwined.  Mr. Viveros argues that the Mexican Consulate

would have provided interpreters, and that the lack of interpreters prejudiced his defense.

     D.    *Interpreters*

Mr. Viveros argues that his trial counsel was ineffective for failing to timely

request the appointment of interpreters or bilingual co-counsel.  The Arkansas Supreme

Court considered this argument along with Mr. Viveros's consulate notification argument.

Applying the standard set forth by the United States Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), the Arkansas Supreme Court found

that Mr. Viveros failed to demonstrate that he was prejudiced by the alleged error.

*Viveros v. State*, 2009 WL 3681672, 2 (Ark. Nov. 5, 2009).

The Arkansas Supreme Court noted that under *Strickland*, Mr. Viveros had to

show both that his counsel's performance was deficient and that the deficient

performance prejudiced his defense.  *Id*.  As examples of prejudice resulting from the

lack of an interpreter, Mr. Viveros states that his failure-to-appear convictions resulted

from a language-based misunderstanding.  This argument is not credible considering that

Mr. Viveros's cousin translated for him; his attorney stated that Mr. Viveros knew he had

to attend the first proceeding; and at trial – with an interpreter in attendance – Mr.

Viveros admitted that he had notice of the second proceeding.

Mr. Viveros's other examples of prejudice are equally unavailing.  In one example,

he repeats an argument made for suppression of evidence that alleges his traffic stop was

pre-textual or the result of racial profiling.  (#1, p. 11)  As noted, this Court cannot review

Mr. Viveros's Fourth Amendment suppression claim.

Mr. Viveros's remaining examples of prejudice are vague and conclusory.  He

alleges he was unable to effectively participate in his defense, but he does not describe the

defense, the inability to participate in it, or the difference an interpreter would have made.

(#1, p. 12)  Mr. Viveros mentions pretrial preparation, investigations, interviews, and

critical stages of trial as other areas where an interpreter was needed.  But he has not

come forward with any facts to support his claim.  See *Sanders v. Trickey*, 875 F.2d 205,

210 (8th Cir. 1989) (appellant who produced no affidavit from a witness or any other

independent support for his claim failed to show prejudice because he offered only

speculation that he was prejudiced by his counsel's failure to interview the witness), cert.

denied, 493 U.S. 898, 110 S.Ct. 252 (1989).

Mr. Viveros has not identified which parts of pretrial preparation were deficient;

he has not described the investigations that were needed or neglected; he has offered only

speculation about interviews.  And the facts do not support the allegations.

As the trial court found– and the Arkansas Supreme Court noted – Mr. Viveros's

trial counsel used interpreters during pretrial preparations.  *Viveros*, 2009 WL 3681672 at

p. 3.  The interpreters were either relatives or interpreters available through the

Administrative Office of the Courts.  An interpreter was present and available throughout

trial, including during "critical stages."  Importantly, Mr. Viveros did not offer the state

courts– and has not offered this Court– any evidence that might have been discovered and presented at trial had an interpreter been retained.  *Id*.

This Court cannot call Mr. Viveros's jury conviction into question based on conjecture.  The Arkansas Supreme Court reasonably applied the *Strickland* test in this case.  And that Court's conclusion that Mr. Viveros did not show prejudice was not an unreasonable determination in light of the facts.

V.     **Conclusion**:

Mr. Viveros has not given this Court a basis to issue the writ of habeas corpus he seeks.  For that reason, this Court recommends that the District Judge DENY and DISMISS Efrain Viveros's Petition for Writ of Habeas Corpus (#1), with prejudice.

DATED this 22nd day of August, 2011.

_____
UNITED STATES MAGISTRATE JUDGE